Judge Robertson
delivered th'e opinion of the Court.
BlAke lost bank notes to the amount of $>‘500. They came to the possession of one Hall, by finding or otherwise, who exchanged them with Adkins for a negro, the latter “no! knowing that they belonged to Blake.''1
The administrator of Blake sued Adkins in trover, for the notes. On the triál, the court instructed the jury, that although Adkins might have obtained the notes bona fide, in the regular course of trade, the administrator had a right to recover from him their value, if they proved that the intestate had casually lost them. Whereupon, a verdict was returned for $1500, which the court refused, on motion, to set aside.
Ever since the case of Chism vs. Wood; Hardin, 531, it has been admitted, as a general rule, that as a seller of a commodity cannot transfer a better right to it than he had himself, the original owner can never be divested of his right, without his consent, and consequently, may recover ids property wherever be may find it.
This doctrine is consonant with reason and policy. And if the law w'ere otherwise, warranties of title, express or implied, would-be unmeaning and inoperative. “ Caveat emptorf applies to sales of personal property generally.
But the class of cases of which this is one, is an exception from this general rule of law, because the reason and policy of the rule do not apply to it.
Currency, either metalic or symbolic, passes by delivery. The interests of commerce require that its credit should be unquestionable, and its circulation unobstructed;
Hence bank bills, which pass bv delivery, and bills of exchange, are regulated more by the Hex mereció-riaf than the- ordinary rules of the common law. *41 in this respect they are unlike promissory notes, in this country. The bona fide holder of a bank note, or a bill payable to bearer, is not responsible to the corporation or to the drawer, for any claim of set-off, which existed whilst the bill was in hands of any of those through whom it passed to him. The negotiable character of the paper would be destroyed or very much impaired, by suffering it to be subjected, in the hands of a bona fide holder, to the claims of any person who may have had right to it. There is no warranty of bank notes implied, except that they are genuine.
But he who pde al’(i for a valuable no recovery,
Therefore, if B, find the bank nóte of A, and deliver it to C, the latter can hold it, if he acquired it “bona fide, and for a valuable consideration.” Here, both the claimants are innocent. A lost his note casually. He has been guilty of no fraud or culpable negligence. C has honestly and for á fair price* acquired a fight to the note. In such a case, if the equity of each, were equipollent, the maxim “meliov est conditio possidentis,” would entitle A to the note.
There are (in the language of Lord Mansfield, in Grant vs. Vaughan, III. Burr. 1532,) only two questions'for consideration in such a case. 1st. Did the note come to the possession of C, ‘•fairly and bona fide,” (which necessarily includes the idea of his not having knowledge that it was the note of A, or a lost note ?) 2d. Is it in fact and in practice, negotiable?”
It seems to be well settled, that in such a case, the former owner cannot recover the note. See the said case of Grant vs. Vaughan, I. Lord Ray. 181; I. Salkl. 126; I. Burr. 452; Doug. 632; Croke Elizabeth, 723.
But the same authorities decide, that the holder cannot be protected, unless he acquired the note both bona fide and for a valuable consideration. The feason of the rule Would not extend it farther than this. Hence the finder may be compelled to return the note or its value, to the owner. So, a purchaser from the finder or thé thief, may be subjected to the payment of the value of the note to the owner, if he knew, or had sufficient reasons to suspect, that it had *42 been lost or stolen. While the interests pf trade require that the negotiability of mercantile paper, shall not be affected by occuit circumstances, not apparent or ascertainable in the ordinary circulation of it, moral honesty demands that all who trade in such •commodity, shall act with probity and a reasonable vigilance. As no honest and just man, would buy a bank note, when he knew or had strong grounds for' ■suspecting, that it had been lost or stolen, therefore, no one shall refuse to restore a lost or stolen note, to the owner, unless he shail have obtained it innocently and for a valuable consideration. If he shall have thus acquired a right to it, he must hold it against the world.
When a verdict is report- , ed, if any one of the jury dissent, it is error to enter the verdict.
Triplett and Wickliffe, for plaintiff; Hanson, for defendant.
As it is admitted in the bill of exceptions in this case, that Adkins got possession of the notes “bana fdef and fora valuable consideration, the instruction of the circuit court was erroneous, and a new trial ought to have been granted.
If the jury had believed, from the circumstances of the case, that. Adkins knew that the notes did not belong to Hall, they ought to have found a verdict for the plaintiff in the action. This was a fact for their consideration. The court had no right to instruct them as it did.
There is another objection to the judgment, which would alone be sufficient to reverse it. When the jury came into court and announced the verdict, two of thejurors, declared that it,was not their verdict, and that they would not agree to it. But the court, on ascertaining that the jurors had agreed, in their room, to submit to a majority, directed the verdict to be entered, and rendered judgment upon it. This cannot be tolerated. When the verdict is reported, the jurors must all sanction it, or it is not their finding.
Wherefore, the judgment is reversed, and the capse remanded for a new trial.